**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward Grady PARTIN, Defendant-Appellant.**

No. 75–1378.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1975.

994

Lawrence R. Anderson, Jr., Baton Rouge, La., J. Minos Simon, Lafayette, La., for defendant-appellant.

Douglas M. Gonzales, U. S. Atty., Robert S. Leake, Asst. U. S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

The primary issue in this case involves the effect of *Muniz v. Hoffman,* 1975, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 on the right to a jury trial of an alleged contemnor of a *Boys Markets* injunction.[1]

Edward Grady Partin, the defendant-appellant, is a "business agent" for General Truck Drivers, Warehousemen, and Helpers Local No. 5. The district court, consistent with the *Boys Markets* interpretation of § 301 of the Labor Management Relations Act,[2] entered a temporary restraining order on November 27, 1974, enjoining Local No. 5 and "its officers, agents, members, and all persons in active concert and participation with them from in any manner engaging in a strike, work stoppage or picketing against Delta Concrete Products Company". For his knowing and willful disobedience of the restraining order, the district court convicted Partin

---

1. *Boys Markets, Inc. v. Retail Clerks Local 770,* 1970, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199.

2. 29 U.S.C. § 185. Although the record in this appeal does not contain the collective bargaining agreement whose violation led to the TRO, the district court's unreported opinion states that the agreement contained a "no strike" clause. Furthermore, references to arbitration in the record and briefs suggest that the agreement included a mandatory arbitration provision. It appears, therefore, that the prerequisites to a *Boys Markets* injunction were present. See *Gateway Coal Co. v. United Mine Workers,* 1974, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583. The validity of the injunction under *Boys Markets* was not challenged by direct review nor asserted as a defense to the contempt charge.

for criminal contempt in violation of 18 U.S.C. § 401(3),[3] and sentenced him to six months imprisonment. Although prior to trial Partin made no request for a jury, on appeal his principal argument challenges his conviction on the ground that the court failed to afford him a jury trial. We hold that Partin had no constitutional[4] or statutory right to a jury trial[5] and that his other assignments of error also are not valid. Accordingly, we affirm.

## I.

The appellant's argument that he is entitled to a jury trial is premised on 18 U.S.C. § 3692, which provides:

In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed. . . .

Because the restraining order that Partin was found to have violated undoubt-edly grew out of a "labor dispute"—a wildcat strike engendered by an employer's firing and failing to rehire a union steward—on its face § 3692 seems to support Partin's position. Unfortunately for Partin, however, the recent Supreme Court case of *Muniz v. Hoffman* has narrowed the scope of § 3692. In the light of *Muniz,* § 3692 grants no right to a jury trial to an alleged contemnor of a *Boys Markets* injunction.

In *Muniz,* the question was whether § 3692 required a jury trial in contempt proceedings arising out of the alleged violation of an injunction, entered under § 10(*l*) of the Labor Management Relations Act, restraining asserted unfair labor practices. The Court held that § 3692 did not compel a jury trial. The essential elements of the Court's reasoning were its findings that § 3692 had originally been enacted as § 11 of the Norris-LaGuardia Act, that § 3692 was no broader now than was its predecessor,[6] and that the injunction involved in the case did not arise from the Norris-LaGuardia Act, but from the Wagner and Taft-Hartley Acts.[7] The in-

---

3. A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—. . .

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. 18 U.S.C.A. § 401.

4. It is commonly understood that there is no constitutional right to a jury trial in criminal contempt proceedings when the sentence actually imposed is not greater than six months and the statute setting the possible penalties does not explicitly authorize such sentences. *Codispoti v. Pennsylvania,* 1974, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912; *Bloom v. Illinois,* 1968, 391 U.S. 194, 88 S.Ct. 1444, 20 L.Ed.2d 522; *Cheff v. Schnackenberg,* 1966, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629. The appellant's arguments to the contrary are frivolous.

5. Because of our conclusion that there was no statutory right to a jury trial, it is unnecessary for us to reach the question whether such a right, if it existed, could be waived by the defendant's failure to demand a jury. We note, however, that trial by jury would have exposed Partin to a more severe penalty than a six months sentence.

6. 422 U.S. at 467–474, 95 S.Ct. at 2186–89, 45 L.Ed.2d at 329–34. Section 11 of the Norris-LaGuardia Act provided that "[i]n all cases arising under [Sections 101–115 of this title] in which a person shall be charged with contempt in a court of the United States . . . ., the accused shall enjoy the right to a . . . trial by . . . jury . . . .". As part of the 1948 revision of the criminal code, § 11 was repealed and replaced by § 3692. The Supreme Court in *Muniz* ruled that, despite the change in the statute's language, there was no intent by Congress to broaden the statute's scope. The Court relied primarily on the legislative history of the revision, which declared that "[t]he original intent of Congress is preserved," S.Rep. No. 1620, 80th Cong., 2d Sess., 1 (1948), and the Revisor's Note to § 3692, which explained merely that "reference to specific sections of the Norris-LaGuardia Act . . . were eliminated," Rep. No. 304, 80th Cong., 2d Sess., A176 (1948). See also *Fourco Glass Co. v. Transmirra Corp.,* 1957, 353 U.S. 222, 226–27, 77 S.Ct. 787, 1 L.Ed.2d 786.

7. 422 U.S. at 462–63, 95 S.Ct. at 2183, 45 L.Ed. 2d at 327.

junction secured by the Delta Concrete Products Company here similarly did not arise under the Norris-LaGuardia Act, but under the Taft-Hartley Act. We are constrained, therefore, to follow the Supreme Court's reasoning in *Muniz.*

The appellant contends that *Muniz* should be limited to its facts. He contends first that the Supreme Court's holding was based on the fact that the injunctions secured under ·§ 10(*l*) of the Taft-Hartley Act were sought, not by private parties, but by a governmental body obligated to act in the public interest. He argues that only this special "screening" by the NLRB permits an encroachment upon the barrier to judicial abuse of injunctions embodied in § 3692. This "screening" factor was important to the *Muniz* Court. As support for its conclusion that the injunctions permitted by the Taft-Hartley Act fell "outside the framework of Norris-LaGuardia",[8] the Court cited three instances of Taft-Hartley's congressional history demonstrating that the NLRB's acting in the public interest was relevant to the creation of NLRB authority to seek injunctive relief.[9]

Second, the appellant points out that § 10(h) of the Wagner Act provided that in "granting appropriate temporary relief for a restraining order, or . . . enforcing . . . or setting aside . . . an order of the Board . . the jurisdiction of courts sitting in equity shall not be limited by" the Norris-LaGuardia Act. The *Muniz* Court also

relied upon § 10(h) in reaching its decision. Where, as in a *Boys Markets* situation, the power to issue an injunction arises from § 301 of the Taft-Hartley Act, § 10(h) of the Wagner Act is clearly inapplicable.

These suggested distinctions between the appellant's case and *Muniz* are patent. Nevertheless, the critical factor in *Muniz* was not the legislative history of the Taft-Hartley Act, nor was it § 10(h) of the Wagner Act.[10] The critical factor was that

those acts expressly or impliedly, *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), authorized various kinds of injunctions in labor dispute cases and expressly or impliedly exempted those injunctions from the jurisdictional and procedural limitations of Norris-LaGuardia to the extent necessary to effectuate the provisions of those Acts.

The crucial issue is whether in enacting the Wagner and Taft-Hartley Acts, Congress not only intended to exempt the injunctions they authorized from Norris-LaGuardia's limitations, but also intended that civil and criminal contempt proceedings enforcing those injunctions were not to afford contemnors the right to a jury trial.[11]

In determining congressional intent, the *Muniz* Court was influenced by the original language of Norris-LaGuardia's § 11, which by its own terms was limited

---

**8.** *Id.* 422 U.S. at 464, 95 S.Ct. at 2184, 45 L.Ed.2d at 328.

**9.** The Court also seemed to find the NLRB's participation significant when it held that the revision of § 11 into § 3692 was not intended to broaden the right to a jury trial. *Id.* 422 U.S. at 467–469, 95 S.Ct. at 2186, 45 L.Ed.2d at 330. In our view, however, the intention of the revisors not to change the substance of the criminal code independently requires that we adopt the limited view of § 3692. See *Id.* 422 U.S. at 470–71, 95 S.Ct. at 2187–88, 45 L.Ed.2d at 331–32 n. 10; note 5 *supra.*

**10.** Justice Stewart, in his *Muniz* dissent, persuasively attacked the force of the argument based on § 10(h), primarily by pointing out that that statute pertained to jurisdiction, whereas the right to a jury trial pertains, not to jurisdiction, but to procedural safeguards. The majority did not take this argument lightly. 422 U.S. at 464–65, 95 S.Ct. at 2184, 45 L.Ed.2d at 328, n. 7. As we read the opinion, however, the Court would have reached the same result in the absence of § 10(h).

**11.** *Id.* 422 U.S. at 461, 95 S.Ct. at 2182, 45 L.Ed.2d at 326.

to injunctions "arising under" that Act. In *United States v. United Mine Workers,* 1947, 330 U.S. 258, 298, 67 S.Ct. 677, 91 L.Ed. 884, the Supreme Court held that § 11, so limited, did not apply to an injunction secured by the United States because such an injunction was not governed by the substantive provisions of the Norris-LaGuardia Act.[12] Following the reasoning of *United Mine Workers,* the *Muniz* Court again ruled that

> § 11 by its own terms [does] . . . not apply to contempt cases arising out of these injunctions. By providing for labor act injunctions outside the framework of Norris-LaGuardia, Congress necessarily contemplated that there would be no right to jury trial in contempt cases.

Here, as in *Muniz,* an injunction was entered "outside the framework of Norris-LaGuardia." The injunction is entitled, therefore, to the traditional protection of non-jury contempt proceedings.[13]

The appellant further contends that *Boys Markets* was, by its own language, a narrow case. As such, it should be narrowly construed. The scope of the Norris-LaGuardia Act should be limited only when it is necessary to further national labor policy as reflected in congressional enactments. Because, according to the appellant, granting a jury trial to alleged contemnors of § 301 would not impair any labor policy, *Boys Markets* should be inapplicable in construing § 3692. The appellant's interpretation, however, would amount to an unjustified encroachment upon the power of federal courts to enforce federal law, and the intent of Congress, as interpreted in *Boys Markets,* to enforce mandatory arbitration provisions in collective bargaining agreements freely agreed to by opposing parties.[14]

---

**12.** See also *Brotherhood of Railway Trainmen v. Chicago R. & I. R. R.,* 1957, 353 U.S. 30, 40, 77 S.Ct. 635, 1 L.Ed.2d 622, in which the Supreme Court held that a district court had power to enjoin a strike, notwithstanding the Norris-LaGuardia Act, due to the provision in the Railway Labor Act § 3, 45 U.S.C. § 153, that awards of the National Railroad Adjustment Board shall be "final and binding upon both parties to the dispute". The basis of the Court's decision was that the Norris-LaGuardia Act could not be read alone, and that there must be an accommodation between different statutes adopted in a pattern of labor legislation. *Brotherhood of Railway Trainmen,* like *Boys Markets,* is a case limiting the scope of the Norris-LaGuardia Act, where the abuses protected by that Act do not weigh as heavily as the gains secured by an injunction. Although the Court has emphasized that an "accommodation" is taking place, language of accommodation cannot hide the fact that Congress—insofar as the § 301 injunction is concerned—has repealed portions of the Norris-LaGuardia Act. The extent of this repeal is uncertain. A recent decision of this Court suggest strongly that § 9 of the Norris-LaGuardia Act, requiring that labor injunctions prohibit only such specific acts as are expressly complained of, is applicable to federal courts in *Boys Markets* situations. *United States Steel Corp. v. United Mine Workers,* 5 Cir. 1975, 519 F.2d 1236, 1245–46 (1975). *Muniz* has effectively held, however, that § 3692 is not applicable with respect to injunctions permitted by later statutes; the Court's explicit extension of *Muniz* to the *Boys Markets* situation seems, to this Court, to be inevitable.

**13.** *Muniz* noted, in holding that the code revision did not alter the scope of § 11, see note 5 *supra,* "the historic rule that there was no right to a jury trial in contempt proceedings". 422 U.S. at 470, 95 S.Ct. at 2187, 45 L.Ed.2d at 331; see *United States v. Barnett,* 1965, 376 U.S. 681, 692–95 & n. 12, 84 S.Ct. 984, 12 L.Ed.2d 33; *Green v. United States,* 1958, 356 U.S. 165, 183 & n. 14, and 189–93 (Frankfurter, J., concurring), 78 S.Ct. 632, 2 L.Ed.2d 672.

**14.** See 45 Tex.L.Rev. 179–80 & n. 20 (1966), which suggests that providing jury trials to alleged contemnors when the sentence to be imposed is six months or less may impair the ability of the federal judiciary to enforce laws unpopular with the local populace. See also Note, *The Supreme Court, 1969 Term,* 84 Harv.L.Rev. 30, 200 (1970), and 12 B.C.Ind.& Com.L.Rev. 295, 305 (1970), which suggest that the *Boys Markets*-type injunction does not jeopardize the interests Congress sought to protect by the Norris-LaGuardia Act. Although Note, *The New Federal Law of Labor Injunctions,* 79 Yale L.J. 1593, 1601–02 (1970), cautions that procedural questions should be resolved in favor of the unions in *Boys Markets* situations, it also states the historic abuses of due process in labor injunction situations were the denials of notice and hearing, and the unlimited scope of restraining orders, *id.* at 1606.

■ Although there are constitutional limitations upon the sentence which can be imposed by a court, sitting without a jury, in contempt proceedings, see *Bloom v. Illinois*, 1968, 391 U.S. 194, 88 S.Ct. 1444, 20 L.Ed.2d 522, such constitutional limitations do not apply here. There is no reason to doubt that Congress, when it gave federal courts the power to enforce collective bargaining agreements, believed that the traditional judicial methods of enforcement would be available.[15] *Muniz* has decided that, by keeping § 3692 in our statutory system, Congress did not intend to limit traditional federal court contempt powers within the newly granted injunctive jurisdictions.[16]

## II.

■ Partin contends that there was insufficient evidence to support his conviction. In judging the adequacy of the evidence in a contempt case, as in every other case, the reviewing court is obligated to consider the evidence, along with all inferences reasonably drawn from such evidence, in the light most favorable to the government. *In re Joyce*, 5 Cir. 1975, 506 F.2d 373, 376; cf. *United States v. Lansky*, 5 Cir. 1974, 496 F.2d 1063, 1069; *Blachly v. United States*, 5 Cir. 1967, 380 F.2d 665, 675. So viewing the record, we conclude that the district court had sufficient evidence to find Partin guilty beyond a reasonable doubt.

The carefully detailed findings of fact by the trial judge need only be summarized. There was testimony that Partin assigned Earl Jones to talk to Delta Concrete president Holland and to get back steward Robinson's job. Jones' failure at this task resulted in a phone call from Partin to Holland, during which Partin threatened to "bring [his] men out". After Robinson began picketing Delta Concrete, all Local No. 5 members refused to cross his picket line. One local member testified that he would have returned to work if ordered to do so by "the head of the union—Mr. Partin".

The temporary restraining order was served on Union agent Arnold, at the local's office, on November 27, 1974. The trial court found that the contents of the TRO were well known to Partin shortly thereafter. Nevertheless, the wildcat strike did not end. On December 2, at a meeting with representatives of Delta Concrete and sister concrete ready-mix companies, Partin indicated that he was not in the least concerned with the restraining order. He was quoted as saying, "Judge West could issue some more of those papers but they were a mockery of justice"; that the police would be ineffective in helping Delta Concrete because he "would bring his whole union over to take care of strike breakers"; and that he would "shut down the whole industry if need be."

After reaching a tentative agreement with Holland, Partin reported back to the members of the local, explained the agreement, and informed the strikers that they could not continue to strike without his permission. The strikers immediately agreed to return to work the next day.

The reasonable inferences which could be drawn from this and other evidence are that Partin had control over the behavior of the local members, that he believed that he was not obligated to comply with the TRO, and that he intended to, and did, use the strike as a bargaining weapon despite the court's order to use reasonable efforts to end the strike. The record fully supports the court's finding that Partin "willfully disobeyed [the TRO] . . . beyond a shadow of a doubt."

## III.

■ Partin raises a number of other issues. He contends, for example, that

---

**15.** See note 13 *supra*.

**16.** As *Muniz* noted, many federal courts have construed § 3692 very narrowly. See cases cited 422 U.S. at 474–75, 95 S.Ct. at 2159, 45 L.Ed.2d at 334 n. 12.

the TRO was constitutionally defective for overbreadth and vagueness. We do not comment upon the constitutionality of the TRO. The TRO was not appealed, nor was the district court asked to clarify or modify it. Even if Partin had doubts about the scope or meaning of the injunction, he acted before taking any legal steps to resolve his doubts.[17] Once an injunction has been willfully violated, the court's authority has been affronted. The "way to raise" the questions of "the breadth and vagueness of the injunction itself" is "to apply to the . . . courts to have the injunction modified or dissolved." *Walker v. City of Birmingham,* 1967, 388 U.S. 307, 316–21, 87 S.Ct. 1824, 1830, 18 L.Ed.2d 1210.

■ Next, Partin contends that the government's complaint fails to conform to the requirements of F.R.Crim.P. 42(b). Rule 42(b) provides in part that

A criminal contempt . . . shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.

The motion for criminal contempt is said by Partin to violate Rule 42(b) because it does not state any facts constituting the alleged contempt. The motion sets out the substance of the TRO and alleges that Partin "knowingly and willfully disobey[ed] a lawful order" of the court. This is sufficient compliance with Rule 42(b). See *Backo v. Carpenters' Local 281,* 2 Cir. 1970, 438 F.2d 176, 181, *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99; *MacNeil v. United States,* 1 Cir. 1956, 236 F.2d 149, 151–52, *cert. de-*

*nied,* 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119; *United States v. Schine,* W.D.N.Y.1954, 125 F.Supp. 734, 737. It must be remembered that Partin's alleged contempt was basically in participating in the wildcat strike when his union office and the court order required him to use reasonable means to induce the members of Local 5 to return to work. Partin cannot seriously contend that he was unaware of the nature of this contempt, nor can he demonstrate how a more explicit motion—assuming that such a motion was possible—would have aided him in the preparation of his defense. See *United States v. Robinson,* 9 Cir. 1971, 449 F.2d 925, 930–31 (dictum); *cf. United States v. Joyce,* 7 Cir. 1974, 498 F.2d 592, 595 (failure to characterize contempt proceeding as "criminal" did not prejudice defendant); *FTC v. Gladstone,* 5 Cir. 1971, 450 F.2d 913, 915–16 (same).

■ The appellant also contends that the government used perjured testimony. The district court, in response to Partin's motion for a new trial,[18] adequately answered this contention. The court found that

if [he] were to exclude and extract and delete completely from this record all the testimony of Mr. Arthur Jones [, the alleged perjurer], it would not make one iota's difference in the prior decision of this Court, [to] hold the defendant in criminal contempt.

. . .

Arthur Jones' testimony related primarily to statements made by Pedescleaux, a co-defendant of Partin who was acquitted for lack of sufficient evidence. Without deciding, therefore, whether the prosecution used perjured evidence against Partin,[19] we hold that the harm-

17. See *Regal Knitwear Co. v. NLRB,* 1945, 324 U.S. 9, 15, 65 S.Ct. 478, 89 L.Ed. 661; *New Jersey v. City of New York,* 1935, 296 U.S. 259, 56 S.Ct. 188, 80 L.Ed. 214; *Wirtz v. Ocala Gas Co.,* 5 Cir. 1964, 336 F.2d 236, 240; *Flavor Corp. of Amer. v. Kemin Indus. Inc.,* 8 Cir. 1974, 503 F.2d 729, 732; *Developments in the Law—Injunctions,* 78 Harv.L.Rev. 994, 1084 (1965).

18. We do not decide whether the defendant's counsel's oral notification of the district court that counsel wanted to give notice of an appeal deprived the court of jurisdiction to entertain the motion for a new trial. The district court ruled on the merits of the new trial motion.

19. We note in passing that the prosecution attempted to rectify the alleged misstatements

less error rule, F.R.Crim.P. 52(a), precludes the relief sought on this ground by Partin.

This Court has considered the appellant's other allegations of error. We hold that they have no merit.[20] The judgment is affirmed.

---

of Arthur Jones by producing an FBI agent who impeached Jones' testimony. Moreover, it appears that the misstatement by Jones was in Partin's favor.

20. The appellant also contends that he was entitled to be tried by a jury under 18 U.S.C. § 402; that he was entitled to be tried by a jury under 18 U.S.C. § 402; deprived of his Sixth Amendment right to confrontation by the district court's refusal to allow both of Partin's attorneys to cross-examine Arthur Jones; that he was deprived his Sixth Amendment right to an opportunity to prepare his defense; and that the district court's granting the prosecution an ex parte restrictive order foreclosing after a certain date the filing of pre-trial motions deprived him of due process. Section 402

does not apply here, because there is no evidence in the record to suggest that Partin's disobedience of the temporary restraining order was accomplished "by threats or force." 18 U.S.C. § 1509. The record demonstrates that the defendant was not hampered by the limiting of cross-examination in accordance with the district court's local rule; that the defendant had adequate time within which to prepare a defense; and that the defendant had ample time within which to move for a modification of the restrictive order.