## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## SEQUOIA DISTRICT COUNCIL OF CARPENTERS, AFL–CIO, Respondent,

and

**John Horn and Larry Null, Additional Respondents In Contempt.**

**No. 73–3365.**

United States Court of Appeals, Ninth Circuit.

Dec. 14, 1977.

Paul Elkind, Washington, D. C., for petitioner.

Victor J. Van Bourg, San Francisco, Cal., for respondent.

1. Respondents here are Sequoia District Council of Carpenters and two of its officer-agents, John Horn and Larry Null.

 Other union agents were originally named as respondents, but the special master concluded that they did not have adequate notice of the terms of our judgment to support a finding of contempt. The NLRB did not take exception to that conclusion.

2. The NLRB requested an adjudication of contempt on October 17, 1975. We appointed a Special Master to hear the case in March, 1976. The Master's report was filed with this court on April 1, 1976.

3. Sequoia is a labor organization composed of three constituent local unions which pay per capita fees to Sequoia in return for representation services. Sequoia embraced the same territorial boundaries as the Building Trades Council for Fresno, Kings, Madera and Tulare Counties (BTC), an amalgam of local construc-

Before KOELSCH, WRIGHT and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

## I.

## BACKGROUND

This matter comes before us on respondents'[1] exceptions to findings of fact and conclusions of law of a Special Master appointed by this court. We appointed the Master pursuant to the National Labor Relation Board's (hereafter NLRB or Board) petition for an adjudication of contempt[2] against Sequoia District Council of Carpenters (hereinafter Sequoia or Union) and its officers.[3]

In an earlier proceeding we enforced a Board order prohibiting Sequoia from engaging in illegal secondary activities.[4] *NLRB v. Sequoia District Council of Carpenters,* 499 F.2d 129 (9th Cir. 1974). That judgment ordered that Sequoia

1. Cease and desist from:

 (a) Picketing or encouragement of any individual employed by Headliner Plumbing Company *or by any other person* engaged in commerce . . . to engage in a strike or refusal, in the course of his

tion trade unions. Two of Sequoia's member unions are affiliated with BTC. Sequoia and BTC are informally allied by virtue of mutual goals, historical interaction and some officials who have held positions in both organizations.

4. While recognizing the legitimate rights of labor organizations to engage in concerted activity to attain lawful goals, Congress has proscribed certain tactics aimed at enmeshing neutral third party employers in disputes between a union and its primary employer adversary. When pressure is exerted on an otherwise uninvolved third party with the objective of forcing the third party to pressure the primary employer to accede to union demands, there is illegal secondary activity. 29 U.S.C. § 158(b)(4)(i)(B). *NLRB v. Local 825, Operating Engineers,* 400 U.S. 297, 302, 91 S.Ct. 402, 27 L.Ed.2d 398 (1971).

employment, to use, manufacture, process, transport or otherwise handle or work on any goods . . . or to refuse to perform any other services, where an object thereof is to force or require Headliner Plumbing Company, *or any other person*, . . . to cease doing business with that business enterprise or *any other person.*

(b) Threats, coercion or restraint directed against Headliner Plumbing Company, *or any other person* engaged in commerce or in an industry affecting commerce, where an object thereof is to force or require Headliner . . . *or any other person,* to cease . . . dealing in the products or services made available by Lattanzio Enterprises, or to cease doing business with that business enterprise *or any other person.* (Emphasis added.) [5]

In addition, the judgment required that "to effectuate the policies of the [National Labor Relations] Act" Sequoia post notices embodying the terms of the judgment in its offices, meeting halls or hiring halls for a period of 60 days. Copies of the notice were to be supplied by the NLRB's Regional Director in San Francisco. The judgment was served on the attorney for Sequoia. The NLRB supplied notices which lacked language indicating the breadth of the judgment's prohibitions.[6]

## II.

### SCOPE OF REVIEW

■ We must accept the Special Master's factual findings unless they are "clearly erroneous." *Oil, Chemical, and Atomic Workers Int'l Union v. NLRB,* 178 U.S.App. D.C. 278, 547 F.2d 575 (1976), *cert. denied, Angle v. N. L. R. B.,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). This standard of review has been described as follows:

**5.** The Board's original cease and desist order, 206 NLRB No. 8 (1973), and our judgment were broadly framed because Sequoia had demonstrated a "proclivity" to engage in secondary activity. The breadth of the order was a disputed issue in earlier proceedings. We held that such an order was proper in this case. 499 F.2d at 129.

. . . the same standard as that governing appellate review of District Court findings of fact, *see* Fed.R.Civ.P. 52(a); 9 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2614, at 809–10 (1971). The party excepting to the master's findings carries the burden of proving them to be clearly erroneous . . . and the court must uphold a finding, even if it is thought to go against the weight of the evidence, unless the error is clear . . . . [T]he mere fact that a finding is supported by substantial evidence does not prevent its being overturned if the reviewing court, with due regard for the master's opportunity to judge credibility, "is left with the definite and firm conviction that a mistake has been committed. . . ." However, a master's conclusions of law are entitled to no special deference . . . and will be overturned whenever they are believed to be erroneous.

*Id.* at 580 (citations and footnotes omitted). Respondents here challenge findings of fact and conclusions of law in the Special Master's report.

■ We shall proceed to apply this standard, being mindful that the Board's allegations of contempt must be supported by clear and convincing evidence. *NLRB v. J. P. Stevens Co., Inc.,* 464 F.2d 1326, 1328 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973).

### III.

### THE SPECIAL MASTER'S FINDINGS

1. *Sequoia's Conduct.*

The Special Master found that respondents, by the following actions, violated our decree at the Big Yellow House restaurant construction site in Fresno, California:

**6.** Specifically, the NLRB's notices lacked the "or any person" language that was contained in the administrative law judge's proposed order (as corrected by errata thereto), the Board's decision and order, and our judgment enforcing the order.

a. With the intention of forcing Workmen's Construction Company (Workmen's) to cease doing business with Construction Design and Consulting, Inc. (CDCI),[7] they induced or encouraged Workmen's employees to refuse to work by filing union charges against them for crossing a Building Trades Council picket line on May 12, 1975.

b. With the intention of forcing Interior Contractors (Incon) to cease doing business with CDCI, Sequoia and its agents checked union cards of, and filed charges against, Incon employees working behind the Building Trades Council picket line on July 7, 1975.

c. With the same intention, Sequoia's agent warned Incon employees during a union meeting that they could be fined for working at the site.[8]

d. They further encouraged Incon employees to stop work by checking union cards of, and filing charges against, other Incon workers at the CDCI project on July 8, 1975.[9]

Additionally, the Special Master found that in a separate incident Sequoia communicated threats to Tone Construction Co. (Tone) and its job superintendent at Tone's Vista Del Norte project with the illegal intention of inducing Tone to cease dealing with Fresno Insulation, a non-union subcontractor.[10]

■ The Master's factual findings are supported by the record and are not clearly erroneous. We recognize the superior position of the Master insofar as he was better able to consider credibility and to draw inferences from the testimonial evidence. We adopt his findings of fact. *Oil, Chemical, and Atomic Workers Int'l Union v. NLRB, supra.*

■ Sequoia's actions, and the actions of respondents Null and Horn as officers of Sequoia, evidence precisely that species of secondary activity that we sought to prevent by our 1974 judgment. Although respondents had the right to directly pressure CDCI and Fresno Insulation, their invocation of additional pressure through neutral employers constituted activity proscribed by our judgment and by the National Labor Relations Act.

---

7. CDCI, the general contractor at the site, was owned by its president, Mr. Dominick Annino. CDCI had no union contract, but Annino Construction Company, a separately licensed company also owned by Dominick Annino, was a signatory to the 46 Northern California Counties Labor Agreement.

 Sequoia argued that CDCI and Annino Construction were alter egos of Dominick Annino and filed a grievance under the agreement, seeking to bind CDCI to its terms. The grievance was never resolved.

 The May 12 charges against Workmen's employees were instituted by respondent John Horn and processed by respondent Larry Null. These and other charges connected with work at the Big Yellow House project were purportedly dismissed at Sequoia's executive meeting on July 17, 1975. However, those charged were not notified of such action until October 20, 1975, three days after the NLRB asked that Sequoia be found in contempt.

 The Special Master found that the manner in which the charges were dropped was untimely, and not sufficiently exculpatory to the workers involved.

8. Carpenters Local 701, Fresno, held a general meeting on July 7, 1975. Larry Null there conveyed the message that members should not cross the Big Yellow House picket line. He also reported that three Incon employees had been cited for working there and faced substantial fines.

 Although Sequoia contended that men were checked merely to ascertain if they had been properly dispatched to the job site and that the discussion at the union meeting was an innocent review of union constitutional provisions, the Special Master did not accept those explanations. There was testimony that Sequoia's actions were intended to induce workers to stop work at the site and that these actions caused some workers to refuse to work on the project.

9. As a result, Incon was unable to complete drywall installation at the Big Yellow House project.

10. Tone was a party to a Carpenters Collective Bargaining Agreement. Sequoia has argued that its actions with respect to Tone were based on a dispute over safety conditions. However, the content and context of the threats clearly, showed Sequoia's object was to pressure Tone to cease dealing with Fresno Insulation. In response to this pressure, Tone finally utilized its own employees to install insulation at the project.

Threatening to fine or to bring union charges against employees of neutral employers pressured them to withhold their services and exerted indirect pressure on the union's primary target. Such tactics are illegal. *E. g., NLRB v. Local 252, Sheet Metal Workers,* 429 F.2d 1244 (9th Cir. 1970). So, too, are threats to pull union workers from a job if the general contractor were to deal with a non-union subcontractor and threats to assess benefit costs against him in this context. *E. g., NLRB v. Plumbers Union of Nassau County, Local 457,* 299 F.2d 497 (2d Cir. 1962); *Associated General Contractors v. NLRB,* 514 F.2d 433, 437 (9th Cir. 1975) (actions against one employer, but tactically calculated to satisfy union objectives regarding another are outlawed by the statute).

Sequoia's justifications for its actions are unconvincing. Federal law requires that intra-union charges be processed with procedural safeguards. 29 U.S.C. § 411(a)(5). That statute, however, does not protect a union or its officers who file such charges as part of a campaign of illegal secondary activity.

Sequoia's threats against Tone would not be lawful even were we to assume that Tone's contract contained a "hot cargo" clause legal under 29 U.S.C. § 158(e)'s construction industry proviso. Such clauses may not be enforced by resort to tactics outlawed by 29 U.S.C. § 158(b)(4). *Associated Gen. Contractors of Cal., Inc. v. NLRB,* 514 F.2d 433, 438–39 (9th Cir. 1975); *NLRB v. International Bro. of Electrical Workers,* 405 F.2d 159, 163 (9th Cir. 1968), *cert. denied,* 395 U.S. 921, 89 S.Ct. 1772, 23 L.Ed.2d 237 (1969).

2. *Notice.*

Null and Horn claim that service on Sequoia's attorney was inadequate to bind them personally to the judgment's terms. They also contend that the judgment called for the NLRB to serve notice and that they were bound only by its defective notices.

They concede knowledge that the order had been issued and served on the union attorney. In fact, Null and Horn, on instructions from the attorney, signed a check to pay costs assessed against Sequoia in that judgment. However, because the Board could not prove personal service on them, Null and Horn assert that the notice was insufficient to support a contempt citation against them.

In "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash Railroad Co.,* 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 *citing Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1879). *Cf.* Fed.R.App.P. 45(c). When the order was served on Sequoia's attorney, the union was clearly bound to abide by it.

Federal Rule of Civil Procedure 65(d) is explicit:

Every order granting an injunction and every restraining order . . . is binding only upon the parties to the action, *their officers,* agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise. . . . (Emphasis added.)

Generally, "[t]o be held liable in contempt, it is necessary that a non-party respondent 'must either abet the defendant or must be legally identified with him' . . . ." *Backo v. Local 281, United Bro. of Carpenters & Joiners,* 438 F.2d 176, 180–81 (2d Cir. 1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971). Those not identified with a party, but in active concert or participation with him, are bound only with actual notice.

It can hardly be argued that the principal officers of a labor union are not legally identified with it, and thus liable in contempt for disobeying an order directed to the union. Persons similarly situated have been held to account for failure to comply with a court's order in analogous situations.

"A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs." *United States v. Greyhound Corp.,* 363 F.Supp. 525, 571 (N.D.Ill.1973), *aff'd;* 508 F.2d 529 (7th Cir. 1974); *NLRB v. Hopwood Retinning Co.,* 104 F.2d 302 (2d Cir. 1939). *Cf. Shakman v. Democratic Organization of Cook County,* 533 F.2d 344 (7th Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976) (city employee could be held in contempt for violation of order against city if he knew of the issuance of the order, although without knowledge of all its terms) (dictum).

 Null and Horn concede they knew the order had issued. *See United States v. Hall,* 472 F.2d 261 (5th Cir. 1972); *Farber v. Rizzo,* 363 F.Supp. 386 (E.D.Pa.1973). Furthermore, there was evidence from which the Special Master could conclude that they had actual notice of the order's terms by virtue of their long-standing relation to the underlying controversy.[11]

It is imperative that we hold these officers in contempt if we are to have respect for and obedience to our orders in such cases. Our order was intended to protect legal rights. Contempt proceedings are unnecessary when such rights are honored. Responsibility must reach those with the power to alter the prohibited conduct.

Finally, the respondents' duty to comply with our order was not altered in any way by the later, defective notices supplied by the NLRB. Those notices were required for posting to effectuate the policies of the Act[12] rather than to be, as respondents contend, the exclusive means of notice of the terms of this court's judgment.

## IV.

### CONCLUSION

The Master was correct in concluding that the respondents had notice of the judgment's terms. We accept the Special Master's conclusion that respondents violated the terms of this court's judgment and are in contempt thereof.

Our order includes conditions of purgation, listed in Appendix A to this opinion. Respondents shall satisfy those conditions not later than February 1, 1978, or we shall take such further action as is reasonably necessary.

SO ORDERED.

### APPENDIX A

It is hereby ordered that, to purge themselves of this court's judgment of contempt, respondents Sequoia District Council of Carpenters, Larry Null, and John Horn ful-

11. Null and Horn were officers of Sequoia, Executive Secretary and Business Agent/District Manager respectively, during the pendency of proceedings before the administrative law judge, the Board, and this court. A major issue in all these proceedings was the propriety of a broad cease and desist order.

The thrust of our decision enforcing the Board's order was our holding that Sequoia's past record justified issuance of a broad prohibition on secondary activities. The entire history of this dispute provides considerable circumstantial evidence that the union and its officers were aware of the scope of our judgment.

12. 29 U.S.C. § 141:

"(b) Industrial strife which interferes with the normal flow of commerce and with the full production of articles and commodities for commerce, can be avoided or substantially minimized if employers, employees, and labor organizations each *recognize under law one another's legitimate rights in their rela-*

*tions with each other,* and above all *recognize under law that neither party has any right in its relations with any other to engage in acts or practices which jeopardize the public health, safety, or interest.*

"It is the purpose and policy of this Act [29 USCS §§ 141–144, 151–158, 159–167, 171–183, 185–187, 191–197, 557], in order to promote the full flow of commerce, *to prescribe the legitimate rights of both employees and employers* in their relations affecting commerce, *to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other,* to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce." (Emphasis added.)

fill the following conditions before February 1, 1978:

1. They shall conduct themselves in all respects consistent with the judgment of this court of August 14, 1974, and in no way by action or inaction, conduce, engage in, induce, encourage, permit, or condone any violation of that judgment.

2. They shall forthwith revoke and rescind any charges, fines, threats to fine or any other adverse actions taken against Mike Sagardia, Danny Harris, Doug Moon, Ron Flake, Derrel Rowland, Howard Lea, William Walker, and Arthur Meola and any other members of the Carpenters Union because of any work at the Big Yellow House job site at a time when there was picketing by the Building Trades Council, and shall expunge and excise from their records all references and other evidence in their files to those charges, and notify the above-named individuals, in writing, of such action.

3. Sequoia shall notify in writing Sequoia's affiliated local unions, the United Brotherhood of Carpenters and Joiners of America, the local unions to which Sagardia, Harris, Moon, Flake, Rowland, Lea, Walker, and Meola belong and any other labor organization to which Sequoia belongs or with which it is affiliated or associated, that it has revoked and rescinded any aforementioned charges, fines, threats of fines or any other adverse actions against the above-named persons and that such charges are void and without merit. Sequoia shall request said locals, the United Brotherhood and other labor organizations to expunge and excise all references to such charges from their records.

4. Respondent Sequoia shall make whole Sagardia, Harris, Moon, Flake, Rowland, Lea, Walker, Meola and Jimmy Ralph for any wage loss they may have suffered by reason of respondents' contumacy, such amounts, unless agreed upon, to be computed by the Board in a backpay proceeding, subject to further review by this court.

5. They shall immediately duplicate at their own expense and post in conspicuous places in Sequoia's business offices, meeting halls and all places where notices to employees and members are customarily posted, for a period of 60 days, copies of an appropriate notice in the form prescribed by the Board, signed by an appropriate officer on behalf of Sequoia, and by the individual respondents, stating that Sequoia and the individual respondents have been adjudged in civil contempt of this court for violating and disobeying the court's judgment of August 14, 1974, and that they shall undertake the action in purgation directed by the court. They shall maintain such notices and a copy of the contempt adjudication in clear, legible condition throughout the posting period and insure that they are not altered, defaced or covered by other material.

6. They shall sign, duplicate and mail, at their own expense, sufficient copies of such notice and of the adjudication to the NLRB Regional Director for the Twentieth Region, 13018 Federal Building, Box 36047, 450 Golden Gate Avenue, San Francisco, California 94102, for posting at the offices of the employers concerned with the conduct forming the basis of the adjudication of contempt, such employers willing.

7. They shall sign, duplicate and mail, at their own expense, copies of such notices and of the adjudication to all members of local Carpenters Union affiliated with Sequoia, and they shall submit a list of such members and their addresses to the NLRB Regional Director, together with proof of mailing. They shall have the notice read by an officer of Sequoia at the next regularly scheduled membership meeting of each affiliated local union, and at the next regularly scheduled meeting of Sequoia's delegates, following entry of the contempt adjudication.

8. Each respondent shall file a separate sworn statement with the clerk of this court, and a copy thereof with the Regional Director of the NLRB, showing that steps have been taken by them to comply with this court's directives. Such statements are to be filed 15 days after entry of the adjudication and again at the expiration of the 60-day posting period.

9. Respondent Sequoia shall pay the NLRB all costs and expenses, including counsel fees, incurred in the investigation, preparation, presentation and final disposition of this proceeding. Sequoia shall pay the cost of services rendered, and expenses incurred, by the Special Master as follows:

a. Amounts thus far paid the Special Master from NLRB funds deposited with the clerk of the court . . . . . . . . $1,591.10

b. Balance owing the Special Master from his statement of April 29, 1977 __1,185.00__

In order to insure that respondents comply with the terms of this court's judgment, this court will assess each respondent a fine in an amount hereafter to be fixed for each and every further violation of the terms of said judgment.

Upon failure of the respondents, or any one of them, to purge themselves of civil contempt, this court will issue attachment against them; and

Take such other further action against them and grant petitioners such further relief as is adjudged reasonable, just, and necessary to assure compliance with the judgment and to fulfill the requirements of this contempt proceeding.

KOELSCH, Circuit Judge, concurring in part and dissenting in part:

I concur for the most part in the majority opinion; I am obliged to dissent, however, from that portion of the opinion sustaining the Special Master's findings and conclusions with respect to the union officers Null and Horn.

I have no quarrel with the proposition that one "who knowingly assists a defendant in violating an injunction subjects himself to civil . . . proceedings for contempt." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930). But, as stated by Judge Hand in that case: "[T]he only occasion when a person not a party may be punished [for contempt of an injunction] is when he has helped to bring about, not merely what the decree has forbidden . . . but what [the decree] has power to forbid, an act of a party. This means that the respondent must either abet the defendant,

or must be legally identified with him." 42 F.2d at 833.

The question here is whether the respondents Null and Horn, as officers of the defendant union but not parties to the original NLRB enforcement proceeding, may be adjudicated in contempt of this court's decree as having either abetted the union's violations of the injunction or as being so far identified in law with the union as to be subject to a contempt citation solely on the basis of their status as union officers. The first ground is manifestly factual in nature, requiring " 'clear and convincing proof' that each of the named union officers was personally guilty of contumacious conduct" (*NLRB v. San Francisco Typographical Union No. 21, I. T. U.*, 465 F.2d 53, 57 (9th Cir. 1972); the second is a questionable proposition of law. In my view, neither ground supports the majority in sustaining the Master's finding of contempt on the part of Null and Horn.

The majority appears to accept as self-evident the proposition that, as officers of the defendant union, Null and Horn are legally identified with it for the purpose of finding them in contempt. As I read the cases, however, the matter is not so clear. In *NLRB v. San Francisco Typographical Union No. 21, I. T. U., supra*, this court reversed in part a district court finding of contempt as to a union and its officers on the ground that although the district court had an adequate evidentiary basis for holding the union in contempt of an injunction, a finding of contempt on the part of the union officers must independently be supported by " clear and convincing proof' that each of the named union officers was personally guilty of contumacious conduct . . . [and that] . . . Such 'proof' cannot be said to exist merely because there is proof that the union, as an organization, violated the terms of the injunction." 465 F.2d at 57.

In my view, that is this case. In his report and recommendations, the Special Master, after observing that "[t]his case presents an exceedingly serious question as to the notice or knowledge on the part of

any of the respondents as to the full terms of the Court's final judgment prior to the commission of the prohibited acts," (Special Master's Report and Recommendations, at 15), based his finding against Null and Horn essentially on their status as union officers at the time the original decree entered. They were thus charged with constructive knowledge of the terms of the decree, a course that seems to be forbidden by our holding in *Typographical Union.* *See also North American Coal Corp. v. Local Union 2262, U. M. W.,* 497 F.2d 459 (6th Cir. 1974); *Consolidation Coal Co. v. Local Union No. 1784, U. M. W.,* 514 F.2d 763 (6th Cir. 1975). As I read the record, there was not an iota of evidence that either Null or Horn had actual notice of the terms of the Court's decree. *Cf. United States v. Partin,* 524 F.2d 992, 998 (5th Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976); *Backo v. Local 281, United Bro. of Carpenters & Joiners,* 438 F.2d 176 (2d Cir. 1970, *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971).

Nor is the majority's reliance on the language of Rule 65(d) of the Federal Rules of Civil Procedure determinative. *Cf. Regal Knitware Co. v. NLRB,* 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1945). Both *Backo v. Local 281, United Bro. of Carpenters & Joiners, supra,* and *Shakman v. Democratic Organization of Cook Cty.,* 533 F.2d 344 (7th Cir. 1976), *cert. denied* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), relied on by the majority for the proposition that an officer or employee of a defendant party is bound by an injunction without actual knowledge of its terms, contain only dicta to that effect. *See Backo,* 438 F.2d at 180; *Shakman,* 533 F.2d at 352.

Neither do I share in this case the majority's view that a finding of contempt against the union officers is "imperative." Our decrees can be honored and fully effectuated on pain of contempt proceedings against the defendant union itself without indulging in a fictitious identification of the union and its officers in order to supply the necessary predicate—absent in this case—that "each of the named union officers was personally guilty of contumacious conduct."

*NLRB v. San Francisco Typographical Union No. 21, I. T. U., supra.*