NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

JOHN ZINK COMPANY, Respondent.

No. 74–1254.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Dec. 8, 1976.

Decided March 14, 1977.

800

Stanley R. Zirkin, Washington, D. C. (Paul Elkind, Asst. Gen. Counsel, Washington, D. C., for Contempt Litigation, John S. Irving, Jr., Gen. Counsel, John E. Hig-

gins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., were with him on the brief), for petitioner.

Richard L. Barnes, Tulsa, Okl. (Charles A. Kothe, Richard L. Barnes, William D. Toney, Kothe, Nichols & Wolfe, Inc., Tulsa, Okl., were with him on the brief), for respondent.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The petition of the National Labor Relations Board asks that John Zink Company be adjudged in civil contempt for violation of our July 19, 1973, order enforcing a NLRB order. See No. 74–1254, *N.L.R.B. v. John Zink Company* (unpublished opinion filed June 22, 1973). The NLRB decision is found at 196 N.L.R.B. 942. We referred the matter to a Special Master who conducted a hearing and filed a report containing his findings, conclusions and recommendations. Both the Board and Zink have objected to the Master's report.

Our 1973 order required Zink to bargain in good faith with the employees' representative on wages, hours and other terms and conditions of employment. The petition of the Board asserts that Zink violated our order by unilaterally, and without proper bargaining, reclassifying and granting merit increases to some employees, by denying to a union representative access to the plant, and by paying Christmas bonuses.

United Steelworkers of America, AFL–CIO–CLC, was certified as the exclusive bargaining representative of the production and maintenance employees of Zink's Skiatook plant in Oklahoma. After our July 19, 1973 order, Zink and the Union agreed to meet on September 4, 1973, to resume bargaining negotiations. On September 27, the Union called a strike which lasted until October 2, 1974. During the strike, the Zink plant remained in operation and the bargaining negotiations continued.

The Master concluded that Zink had violated our order by (1) refusing to bargain on reclassifications and merit increases and (2) refusing a Union representative access to the plant. With regard to the Christmas bonuses, the Master held in favor of Zink because the parties had come to a good faith impasse and, accordingly, Zink was justified in unilaterally granting the bonuses.

█ We reject the Zink claim that the Board must prove civil contempt beyond a reasonable doubt. *Brooks v. Yarbrough*, 10 Cir., 37 F.2d 527, 532, is not on point. That case concerned the standard to be applied in establishing an oral contract to make a will. The standards applicable to a Master's report in contempt proceedings for violation of a judicial enforcement order are stated in *W. B. Johnston Grain Company v. N.L. R.B.*, 10 Cir., 411 F.2d 1215, 1217. The Board is required to establish contempt by clear and convincing evidence and the Master's findings of fact are binding unless clearly erroneous. Ibid.

The Board points to 84 job classification changes and merit increases. We disregard two of these because of their questionable pertinence. Eighty-two were promotions from one job classification to another. Zink acted unilaterally in making these changes. The Master found that the promotions "were made only after management considered factors which demanded the exercise of discretion." He held that the changes "were not automatic and were a mandatory subject of bargaining."

█ An employer has a statutory duty to bargain with his employees' certified representative concerning wages, hours, and other terms and conditions of employment. *N.L.R.B. v. Borg-Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823; see also § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). In *N.L. R.B. v. Katz*, 369 U.S. 736, 746–747, 82 S.Ct. 1107, 8 L.Ed.2d 230, the Court distinguished between automatic and discretionary wage increases and held that discretionary increases during contract negotiations violated the employer's duty to bargain in good

faith. Automatic increases are sanctioned because they do not represent actual changes in conditions of employment but continue the status quo in the sense that they perpetuate existing terms and conditions of employment. Ibid. Because the employees expect these benefits and readily recognize them as established practice, the increases do not tend to subvert employees' support for their bargaining agent or disrupt the bargaining relationship.

■ Management may not make unilateral changes which give "discretionary increases in pay based upon management's assessment of the performance of an individual employee * * *." *N.L.R.B. v. Ralph Printing & Lithographing Company*, 8 Cir., 433 F.2d 1058, 1062, cert. denied. 401 U.S. 925, 91 S.Ct. 883, 27 L.Ed.2d 829. Unilateral increases are "violations of the duty to bargain unless the company granted them as part of a long-standing, non-discretionary pattern of pay raises." *N.L.R.B. v. J. P. Stevens & Co., Inc., Gulistan Div.*, 5 Cir., 538 F.2d 1152, 1162. See also *N.L.R.B. v. Southern Coach & Body Company*, 5 Cir., 336 F.2d 214, 217–218. The record sustains the Master's finding that the raises in question were not automatic but resulted from the exercise of managerial discretion.

■ Zink argues that even if it did have a general duty to bargain about the reclassifications, the strike by the Union suspended the duty. During a strike an employer may protect and continue his business. *N.L.R.B. v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345, 58 S.Ct. 904, 82 L.Ed. 1381. Employers have been permitted during strikes to unilaterally eliminate job classifications, *M. R. & R. Trucking Company v. N.L.R.B.*, 5 Cir., 434 F.2d 689, 696, subcontract out work, *N.L.R.B. v. King Radio Corp.*, 10 Cir., 416 F.2d 569, 572, cert. denied 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420, and permanently replace strikers, *N.L.R.B. v. Mackay Radio & Telegraph Co.*, 304 U.S. at 345–346, 58 S.Ct. 904. During a strike reclassification of employees is proper without union bargaining if the reclassifications are necessary to continue operations. *N.L. R.B. v. Southern Coach & Body Company*, 5 Cir., 336 F.2d 214, 218. As with all cases concerned with expanded rights of an employer during a strike, the key is whether the actions were required by emergency conditions arising from the strike. An employer may not use a strike as an excuse for committing unfair labor practices. *Hawaii Meat Company v. N.L.R.B.*, 9 Cir., 321 F.2d 397, 400.

■ In his report the Master pointed out that Zink presented no evidence that the reclassifications were required by business necessity. The Zink briefs do not tell us where in the record any evidence of business necessity may be found, and we have found none. Conclusionary statements of business necessity are not enough. We accept the finding of the Master that the reclassifications did not result from business necessity.

■ Zink argues that the Union's proposed plan on reclassifications discriminated against non-strikers and thereby negated any duty Zink had to bargain on the issue. Zink made no claim of discrimination when the Union's plan was presented and did not assert discrimination as its reason for not bargaining on the subject. An unstated objection did not negate Zink's duty to negotiate on a mandatory subject of bargaining. On the record presented Zink's refusal to bargain on the reclassifications violated our order and § 8(a)(5). Zink's claim of a good faith belief in compliance with the order is irrelevant. *N.L.R.B. v. Burnett Construction Company*, 10 Cir., 350 F.2d 57, 60.

■ Zink denied plant access to a Union representative who wished to verify whether the non-strikers who had been reclassified were performing tasks mandated by their new classifications. The Union must show a legitimate need for plant access. When the need is demonstrated it must be balanced against an employer's right to be free from undue interference with the operation of his business. See e. g. *Fafnir Bearing Company v. N.L.R.B.*, 2 Cir., 362 F.2d 716, 720–721, and *General Electric Company v. N.L.R.B.*, 4 Cir., 414 F.2d 918, 922–923,

cert. denied 396 U.S. 1005, 90 S.Ct. 557, 24 L.Ed.2d 496. In determining the Union's need for access, other reasonable means for the Union to obtain its objective must be considered. See e. g. *N.L.R.B. v. Tamiment, Inc.*, 3 Cir., 451 F.2d 794, 797–799, cert. denied 409 U.S. 1012, 93 S.Ct. 440, 34 L.Ed.2d 306.

■ To support its charge that those who crossed picket lines were rewarded with promotions, the Union had the right to know whether those persons were properly classified. The Union representative requested only that he be able to observe the workers and offered to be escorted by a person of Zink's choice. The threat of interference with plant operations was minimal.

Zink says that the Union had reasonable means other than plant visitation to get the needed information. The only alternative means shown to obtain the requested information was through discussions with those employees who had refused to strike or who had decided to abandon the strike. It is reasonably doubtful that non-striking employees would be cooperative in interviews regarding whether their higher pay coincided with their job duties. We agree with the Master that the Union had a legitimate need for plant access, that there would have been no disruptive interference with plant operations, and that there was no reasonable alternative source of the information. Denial of plant access violated our order.

■ The Zink practice of paying Christmas bonuses was an integral part of its wage structure and, hence, a mandatory subject of bargaining. The Master held that Zink and the Union had reached a legally cognizable impasse on Christmas bonuses and, hence, Zink could act unilaterally. The Board objects to this holding of the Master. The Board concedes that the parties reached a technical impasse on the issue in 1974.

In November, 1973, Zink presented the Union with proposed changes in the bonus plan. The bonus was based not only on seniority but also on attendance during the year. The Union demanded to see the list of employees entitled to the bonus before responding and insisted that the old seniority formula be used. The list was furnished on November 30. At a bargaining session on December 3 neither party presented any proposals with regard to the bonus. The Union was aware of Zink's need to make a prompt decision. The bonuses were distributed on December 7.

The controversy centered over the inclusion of attendance as a factor in computing the award. The Board has held, *Electro Vector, Inc.*, 220 NLRB 445, that: "It is, of course, legitimate to reduce the bonus by the length of any employee's absence, even if that absence is due to a strike." (Footnote omitted.)

Determination of an impasse is a matter of judgment. *Taft Broadcasting Co.*, 163 NLRB 475, 478; see also *Dallas General Drivers, W. & H., Local No. 745 v. N.L.R.B.*, 122 U.S.App.D.C. 417, 355 F.2d 842, 845. During the 1973 negotiations the Union was aware of the time element and presented no proposal for solution of the problem. See *American Ship Building Co. v. N.L.R.B.*, 380 U.S. 300, 303, 85 S.Ct. 955, 13 L.Ed.2d 855. The Master's holding of an impasse was a reasonable exercise of judgment, and we will not disturb it. Because of the impasse Zink could act unilaterally in paying the Christmas bonuses.

■ We agree with the Master that Zink violated our 1973 order by the unilateral reclassification of employees and by denying plant access to a Union representative. His recommendations include a make-whole order covering striking employees who were excluded from consideration for promotion even though they had the necessary qualifications. Zink says that the Board's proof of discrimination was speculative. On the record neither the employees injured by discrimination nor the pay to which they are entitled can be ascertained with certainty. Lack of certainty does not preclude an award when the employer's wrongful acts contribute to the uncertainty. See e. g. *N.L.R.B. v. Miami Coca-Cola Bottling Company*, 5 Cir., 360 F.2d 569, 572–

573. The Master recommended that determination of back-pay awards be made by supplemental proceedings before the Board with review by this court. This procedure has been approved in other circuits. See e. g. *N.L.R.B. v. Johnson Manufacturing Co. of Lubbock*, 5 Cir., 511 F.2d 153, 157, cert. denied 423 U.S. 867, 96 S.Ct. 130, 46 L.Ed.2d 97. We approve the Master's recommendation.

■ Zink argues that the cease and desist portions of the Master's recommendations are improper because Zink and the Union reached a collective bargaining agreement effective November, 1975. Our original decision upheld the Board determination that Zink had not bargained in good faith. We have now held that Zink has disobeyed our order to bargain. The 1975 contract was for a term of one year and, so far as the record shows, has ended. The issuance of a cease and desist order depends on whether there is a reasonable expectation that the wrong will be repeated. *N.L. R.B. v. Raytheon Co.*, 398 U.S. 25, 27, 90 S.Ct. 1547, 26 L.Ed.2d 21. The record of this controversy between Zink and the Union, covering a period beginning in August, 1970, and still continuing, shows the need for a cease and desist order.

■ The Board objects to the Master's recommendations which deny to the Board the recovery of its attorneys' fees and which require each party to bear its own costs. The Board says that at the very least it is entitled to its fees, costs, and expenses pertaining to the contempt charges which are upheld. The interrelationship of the issues is such that any division of attorneys' fees among those issues would be no more than speculation. We decline to award attorneys' fees to the Board. Zink shall bear two-thirds of the actual costs in this court.

Zink has violated our July 19, 1973, order by unilateral reclassifications and by denial of Union access to the plant. Judgment shall enter that Zink is in civil contempt and may purge itself of that contempt by taking the actions which the Master has listed in paragraphs (a) through (g) on pages 42–44 of his report. If Zink fails to take those actions, the Board may petition the court for the imposition of the sanctions recommended by the Master.