## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## CONSTRUCTION & GENERAL LABORERS' UNION LOCAL 1140, Respondent,

and

## Leonard J. Schaefer, Additional Respondent in Contempt.

### No. 19297.

United States Court of Appeals, Eighth Circuit.

Submitted July 5, 1989.

Decided Oct. 12, 1989.

---

Larry P. Rothman, Washington, D.C., for petitioner.

David D. Weinberg, Omaha, Neb., for respondent.

Before ARNOLD and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

ARNOLD, Circuit Judge.

Local 1140 of the Construction & General Laborers' Union and Leonard J. Schaefer—Local 1140's secretary and business manager—take exception to the Special Master's [1] Report finding the Union and Schaefer in contempt of a 1968 judgment and two subsequent contempt adjudications of this Court. The most recent contempt adjudication and this case both involve the Union's attempt to engage in prohibited secondary activity under cover of the Contractors, Laborers, Teamsters & Engineers Health and Welfare Fund and Pension Fund (CLT & E Funds). Once again their effort fails. We reject Local 1140's and Schaefer's exceptions and adopt the Master's findings of fact, conclusions of law, and suggested remedy as our own.

## I.

This case is not new to our Court. In 1968 this Court entered an unreported judgment against Local 1140 embodying the provisions of the National Labor Relations Act prohibiting secondary labor activities. Two subsequent contempt adjudications, one by consent decree in 1972 and another in 1978, enforced the earlier order against Local 1140 and forbade any further union activities designed to "enmesh neutral secondary employers in primary labor disputes between the union and another employer." *NLRB v. Construction & General Laborers' Union Local 1140*, 577 F.2d 16, 18 (8th Cir.1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

The NLRB's latest petition arises from the actions of Local 1140 and Leonard Schaefer in attempting to collect an arrearage to the CLT & E Funds. In addition to serving as secretary and business manager of Local 1140, Schaefer also served as an employee Trustee of both the CLT & E Funds. In October of 1986 Eagle Company

---

1. Lyman L. Larsen, Esq., of Omaha, Nebraska, a member of the bar of this Court, served as Special Master. Master Larsen replaced the Hon. Robert Van Pelt, late a Senior United States District Judge for the District of Nebras-ka, who served as Special Master during the earlier adjudications of the Union's conduct and during this latest action until illness forced his resignation in 1988.

of Omaha, Inc. was under a collective bargaining agreement with Local 1140. That agreement required Eagle to contribute regularly to the Funds. Eagle had nonetheless fallen $3,600 behind in contributions. At that time, Eagle was one of several subcontractors at two construction sites where Local 1140 members were working: the Omaha Public District job-site and the Mockingbird Hills job-site.

In mid-October Leonard Schaefer directed picketing against Eagle at both job-sites to recover the delinquent payments. Schaefer contacted Dan Prochnau, Local 1140's full-time business agent, to aid the picketing effort. With Prochnau's help pickets were recruited from the Union hall, signs were painted,[2] and the pickets were eventually sent to the job-sites.

A similar sequence of events occurred at both the Omaha Power and Mockingbird Hills job-sites. Upon the arrival of a few pickets on October 16th, the general contractor at each site reserved one gate for Eagle's use and reserved at least one other gate for all neutral parties at the site. For two days the pickets respected the neutral gate at each site. Then, on October 20th, pickets were deployed at all gates—including the neutral gate—at each job-site. No employee of any subcontractor or of the general contractor crossed the picket line at either site while all gates were picketed. Picketing ceased at the Omaha Public site on October 22nd and at the Mockingbird Hills site on the 23rd.

At separate meetings of the Trustees of the CLT & E Funds, each group refused to ratify the picketing. Instead, pursuant to their standing procedure, on October 23rd the Funds and the Union filed suit against Eagle to compel payment. The result in this case hinges on this question: for whom was Schaefer acting in orchestrating the disputed picketing?

## II.

Local 1140 and Schaefer do not dispute the Master's findings of fact. They are,

accordingly, adopted without review. The Union's twenty exceptions to the Master's report boil down to four general contentions of law: (1) no labor dispute existed between Local 1140 and Eagle during the picketing [exceptions 1–3]; (2) Schaefer was not acting as the Union's agent, but rather as a CLT & E Funds Trustee, in directing the picketing [exceptions 4–9, 11 & 12]; (3) the picketing did not constitute prohibited secondary activity because sufficient contamination of the neutral gates had occurred, justifying neutral-gate picketing [exception 10]; and (4) the remedies proposed by the Master are unwarranted [exceptions 13–20]. We consider the Union's four contentions in turn.

■ Local 1140 and Schaefer first argue that the Master erred in finding that a labor dispute existed between the Union and Eagle during the picketing. The suit filed by the Funds and the Union on October 23, 1986 supposedly marks the beginning of any dispute between the parties. The undisputed facts prove otherwise. As of October 1, 1986 and throughout the picketing, Eagle was in continuing violation of its collective bargaining agreement with Local 1140. That same agreement authorized picketing as a proper response to such a violation. Eagle's failure to make timely contributions to the Funds created the dispute and set in motion the picketing of the two job-sites. The conflict over Eagle's delinquent contributions satisfies this Court's interpretation of the National Labor Relations Act's definition of a labor dispute. *NLRB v. Greyhound Lines, Inc.,* 660 F.2d 354, 356 (8th Cir.1981) (broadly construing 29 U.S.C. § 152(9)'s definition by emphasizing that *"any controversy* concerning terms, tenure or conditions of employment" is a labor dispute). While the lawsuit formalized this dispute, Local 1140 and Eagle were already at odds when respondent Schaefer coordinated the picketing in question.

2. The signs bore the following message:
Eagle Co.
Delinquent in Contributions to
the CLT & E Health & Welfare
& Pension Funds
This Dispute with Above Employer Only
Leonard J. Schaefer, Trustee

The respondents next contend that the Master mistakenly held the Union responsible for picketing done on behalf of the CLT & E Funds. Though also a Union official, respondent Schaefer's direction of the picketing is allegedly not contemptuous because he was supposedly acting only as the Funds' fiduciary. The respondents' arguments, however, fail to persuade.

The picketing was done by Local 1140 and on Local 1140's behalf. It was the Union's bargaining agreement that Eagle violated by not contributing to the Funds. That same agreement authorized Union picketing in response to Eagle's breach. The Union exercised that option through its agents: secretary and business manager Leonard Schaefer and business agent Dan Prochnau. At Schaefer's direction, Prochnau recruited, supervised, and paid the pickets. Further, all the pickets were current or former members of Local 1140. The Union's responsibility for the picketing—as found by the Special Master—is the only result supported by this record.

Schaefer's actions were those of a Union secretary responding to the breach of a collective bargaining agreement rather than those of a Funds Trustee. The existing procedures of both Funds called not for pickets but for a lawsuit to compel delinquent contributions. Further, all Funds action requires approval of a majority of Trustees. Schaefer had no such approval before he picketed the job-sites. Moreover, Trustees of both Funds refused to ratify the picketing after the fact. Instead, pursuant to standing policy, the Funds and the Union sued Eagle. Schaefer's picketing is not protected by his status as a Funds Trustee because his actions were outside his fiduciary responsibilities.

Respondent's reliance on *NLRB v. Amax Coal*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), is misplaced. While involving a similar dispute between the Trustees of an employee benefit fund, the Union and the employer, that case does not support Local 1140's position. *Amax Coal* stands for the proposition that once appointed, a Trustee's fiduciary obligation runs only to the trust's beneficiaries—irrespective of who appointed the Trustee or under what scheme of representation the Trustee was appointed.

Applied to this case, *Amax Coal* relieves Schaefer of any obligation as a Fund Trustee to the Union that appointed him. *Amax Coal* does not, however, relieve Schaefer of his responsibility for contemptuous conduct in pursuing his obligations as a Union officer. Schaefer may not invoke *Amax Coal* to transform his conduct as the Union's agent into the conduct of a Funds Trustee. This is especially the case given the impropriety of unauthorized picketing by a Funds Trustee. The respondents' citation of this Court's decision in *Niagara of Wisconsin Paper Corp. v. Paper Industry Union–Management Pension Fund*, 800 F.2d 742 (8th Cir.1986), is equally misguided. Applying *Amax Coal*, the *Niagara* Court sustained the actions of employee-benefit-fund Trustees as consonant with their fiduciary obligations to beneficiaries. *Niagara* lends no support to respondents' arguments.

Respondents further contend that the contamination of the neutral gates justified their neutral-gate picketing. Their argument, however, is without a factual foundation. The Master noted only one instance that arguably constituted use of one of the neutral gates at the Omaha Public job site by an Eagle employee. Even assuming such a use occurred, this isolated incident is insufficient to contaminate either the neutral gate where it (supposedly) occurred, the other neutral gate at that site, or the neutral gate at the Mockingbird Hills site.

Local 1140 and Schaefer finally object to all aspects of the remedy proposed by the Special Master. We reject the respondents' numerous exceptions. Notifying Local 1140's rank and file of the result in this case is an entirely appropriate way of fostering future compliance with this Court's orders to the Union. Assessing costs against the contemnor Union further demonstrates to Local 1140 the seriousness with which this Court views violations of its orders. The fines proposed by the Master are also appropriate. Guided by the

considerations embodied in this Court's 1978 order, the Master recommended reducing the amounts proposed in that decree because of Local 1140's decade of compliance and the small number of days and locations involved in this case. The Master's further recommendation that respondent Schaefer read and signify in writing his willingness to abide by the Court's orders in this case is lenient rather than objectionable. The Master's final recommendation to restate and supplement the prospective fines embodied in the 1978 order is also well taken. Including an additional $500.00 fine per violation for any Union agent violating the order will further inhibit non-compliance. In sum, we concur in the Master's proposed remedy and amend it only by also assessing the costs for the Master's services against the Union.

For all of the foregoing reasons,

IT IS ORDERED that the Master's findings of fact and conclusions of law are adopted in their entirety.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Construction and General Laborers' Local 1140, AFL–CIO is in civil contempt of this Court and that the Union, through its officers and agents, shall purge itself of this contempt by:

1. Paying to the National Labor Relations Board, for deposit in the United States Treasury, a fine of Fifteen Thousand Dollars ($15,000).

2. Fully complying with and obeying the Order of the National Labor Relations Board enforced by this Court's Decree of May 13, 1968, and fully complying with and obeying this Court's Orders of contempt of February 9, 1972 and May 8, 1978.

3. Immediately posting in conspicuous places in its business offices, meeting halls, and all places where notices to employees are customarily posted, for a period of sixty (60) consecutive days, copies of the Court's Order in this case, and a notice in the form to be supplied by the Board, signed by an appropriate officer on behalf of the Union, stating that the Union has been adjudged in civil contempt for violating and disobeying the Court's Judgment of May 13, 1968, and for violating and disobeying the Court's Judgment of February 9, 1972, and for violating and disobeying the Court's Judgment of May 8, 1978, and that the Union will immediately undertake the action ordered in purgation. These notices, together with a copy of the contempt adjudication, will be maintained in clearly legible condition throughout the posting period, and the Union shall further insure that these notices are not altered, defaced, or covered by any other material.

4. Signing and mailing sufficient copies of this notice and of the adjudication to the Director of the Board's Seventeenth Region, 616 Two Gateway Center, Kansas City, Kansas 66101, for posting at the offices of the employers named in the Board's Petition, if these employers consent.

5. Signing and mailing copies of these notices and of the adjudication to all members of Local 1140, and submitting a list of all Union members and their addresses to the Regional Director, together with proof of mailing.

6. Having this notice read by an appropriate officer of Local 1140 at the next regularly scheduled meeting of its membership following entry of the contempt adjudication. The Director of the Board's Seventeenth Region shall be given at least two (2) weeks' notice of such meeting and a Board agent shall be permitted to attend the meeting, at the Director's option.

7. Publishing this notice and contempt adjudication, in a format approved by the Regional Director, in the next issue of Local 1140's Newsletter.

8. Filing separate sworn statements with the Clerk of this Court, and copies thereof with the Regional Director, within thirty (30) days after the order of adjudication and again upon the termination of the posting period, showing what steps have been taken to comply with the Court's directives.

9. Paying the Board all costs and expenses incurred in the preparation for and final disposition of this proceeding, exclu-

sive of attorneys' salaries or the expenses of investigation, upon submission by the Board of a verified bill of costs.

10. Paying the Special Master, within thirty (30) days of this order, all costs and expenses incurred in investigating the Union's contempt, documented as a total of $24,787.25 by his "Request for Compensation" filed with this Court on May 22, 1989, which request is hereby approved in its entirety. This award, if not paid within thirty (30) days of the date of the filing of this opinion, shall bear interest at the rate provided by law for judgments of United States District Courts.

11. In the event respondent Local 1140, through its officers and agents, fails to purge itself of contempt as herein ordered, this Court shall deal further with the matter by considering imposition of:

(a) a compliance fine on the Union of $10,000.00 for each separate place where unlawful secondary activity occurs;

(b) an additional fine on the Union of $1,000.00 for each additional day on which this unlawful activity continues at each location or locations;

(c) a compliance fine on any agent of the Union of $500.00 per violation for conduct undertaken by the agent for the Union which violates this Court's judgment of May 13, 1968, or any of the contempt adjudications rendered pursuant to that judgment;

(d) body attachment upon any officer or agent responsible for the Union's non-compliance; and

(e) any other means this Court may direct.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Leonard J. Schaefer is in civil contempt of this Court and that he shall purge himself of this contempt by:

(1) Reading this contempt adjudication and signifying in writing, under oath that:

(a) he has been furnished with a copy thereof and of the Court's Judgment of May 13, 1968, and contempt adjudications of February 9, 1972 and May 8, 1978;

(b) he has read and understands the Judgment and the three contempt adjudications; and

(c) that he will conduct himself in all respects consistently with the terms thereof and will in no way, by action or inaction, commit, engage in, induce, encourage, permit, or condone any violations of these orders of the Court.

(2) Furnishing copies of this acknowledgment to the Regional Director of the Board's Seventeenth Region, 616 Two Gateway Center, Kansas City, Kansas 66101, within thirty (30) days after the entry of this Court's Order. This Court retains jurisdiction for purposes of enforcing this order.

It is so ordered.