NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MONFORT, INC., formerly known
as Monfort of Colorado, Inc.,
Respondent.

Nos. 90–9518, 90–9527 and 91–9501.

United States Court of Appeals,
Tenth Circuit.

July 7, 1994.

526

Charles E. Sykes and Judith Batson Sadler of Bruckner & Sykes, L.L.P., Houston, TX for respondent.

Before MOORE, LOGAN, and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

This matter comes before us on a petition by the National Labor Relations Board ("the Board") asking this court to adjudicate Monfort, Inc. ("Monfort") in civil contempt for failing to comply with our judgment in *Monfort, Inc. v. NLRB*, 965 F.2d 1538 (10th Cir.1992). Our jurisdiction arises under 29 U.S.C. § 160(e) and (f). *See NLRB v. Southwestern Colo. Contractors Ass'n*, 447 F.2d 968, 970 (10th Cir.1971) (court's original jurisdiction extends to contempt proceedings to enforce its prior judgment); *see also NLRB v. Warren Co.*, 350 U.S. 107, 112–13, 76 S.Ct. 185, 187–88, 100 L.Ed. 96 (1955) (National Labor Relations Act provides judicial remedy of contempt as ultimate sanction to secure compliance with the Board's orders).

Monfort owns a beef processing facility in Greeley, Colorado. From 1962 to 1980, a predecessor to the United Food and Commercial Workers, AFL–CIO, Local Union No. 7–R ("the Union") represented the production workers. In 1980, Monfort closed the Greeley facility and permanently laid off all employees. Monfort reopened the facility in March 1982. On June 24, 1983, a representation election was held in which the Union lost in its bid to act as the collective bargaining representative for the production employees.

Thereafter, the Union filed objections to the election results with the Board, contending that Monfort had engaged in discriminatory hiring practices which disfavored former Union employees, and had committed unfair labor practices during the election campaign. The Board agreed that Monfort had engaged in widespread and pervasive unfair labor practices and ordered a new election. The Board also issued an order which included a broad cease and desist order, a requirement

Submitted on the briefs: *

William Wachter, Asst. General Counsel, Stanley R. Zirkin, Deputy Asst. Gen. Counsel, Kenneth J. Shapiro, Daniel F. Collopy, Attys., Contempt Litigation Branch, Fred Feinstein, General Counsel, and Linda R. Sher, Acting Associate General Counsel, N.L.R.B., Washington, DC, for petitioner.

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case therefore is ordered submitted on the briefs.

to mail and publish notices, and a requirement to allow special union access during the new election. On May 29, 1992, we entered a judgment enforcing, for the most part,[1] the Board's order. In our judgment we ordered Monfort, consistent with the Board's order, to cease and desist from engaging in certain unfair labor practices and to take certain affirmative action necessary to effectuate the policies of the National Labor Relations Act, 29 U.S.C. §§ 151–168, ("NLRA"). *See Monfort*, 965 F.2d 1538.

A second election was subsequently held, and the Greeley facility production employees voted in favor of the Union as their collective bargaining representative. The campaign preceding the election was particularly hard-fought, and resulted in the present petition in which the Board asserts that Monfort violated our May 29, 1992 judgment, and asks this court to hold Monfort in contempt.

In its petition, the Board alleged Monfort had engaged in numerous activities during the representation campaign and election in violation of our previous judgment. These allegations included: (1) threatening employees that they would lose their profit-sharing benefits if the employees selected the Union as their collective bargaining representative; (2) unlawfully interrogating five employees concerning their Union sympathies; (3) showing job applicants a videotape expressing Monfort's views on the adverse consequences of unionization without allowing the Union an equal opportunity to address the applicants; (4) allowing an employee, against company rules, to stencil an antiunion message on the smocks of production employees during working hours; (5) discontinuing the award of a black Trophy Hat to "A" shift Employees–of–the–Month to preclude the awardee from placing prounion stickers on the Trophy Hat; (6) directing an employee to prepare antiunion literature during working hours; (7) failing to resubmit a raise request for an employee, issuing him a written disciplinary notice, and assigning him to work in colder areas of the plant in contravention of

work restrictions imposed by Health Services because the employee supported the Union and because the employee had filed an unfair labor practice charge against his supervisor; (8) failing to promote an employee or pay her a training bonus due to her support for the Union and in retaliation for the filing of an unfair labor practice charge; (9) failing to provide an employee with a meat certificate because of her Union sympathies and because the employee had filed an unfair labor practice charge; (10) disciplining an employee because of her Union sympathies and because the employee had filed an unfair labor practice charge; (11) creating an impression of surveillance by encouraging supervisors to eat in the company cafeteria during Union access periods; and (12) failing to make reasonable postings of Union literature during the election campaign.

We assigned the Board's petition to a magistrate judge, serving as Special Master.[2] Thereafter, the Special Master ordered a period of discovery, conducted a nine-day evidentiary hearing, and received post-hearing briefs. On March 30, 1994, the Special Master issued his report and recommendations. *See Monfort, Inc. v. NLRB*, Nos. 90–9518, 90–9527, 91–9501, 1994 WL 121150, 1994 U.S.App. LEXIS 7236 (10th Cir. March 30, 1994).

In his report, the Special Master found that Monfort violated our May 29, 1992 judgment in five instances, and recommended that we adjudicate Monfort in contempt of our judgment for: (1) allowing employee Vickie Brunson to stencil an antiunion slogan on the back of production workers' smocks during working hours; (2) eliminating the black Trophy Hat for the Employee–of–the–Month on "A" shift; (3) discriminating and retaliating against employee Kelly Roberson for his Union support and for initiating an unfair labor practice charge against his supervisor; (4) discriminating and retaliating against employee Celia Gutierrez for her Union support and for initiating an unfair labor practice charge; and (5) unlawfully interro-

---

1. We partially remanded the case to the Board for the limited purpose of clarification of the reinstatement and backpay remedies for former employee-applicants.

2. United States Magistrate Judge Bruce D. Pringle of Denver, Colorado, served as Special Master in this case.

gating employees Jesus and Manuella Arras, Maria Robles, and Veronica Medrano regarding their Union sympathies. To remedy the violations, the Master's report suggested that we: (1) impose prospective noncompliance fines against Monfort in the amount of $25,000 per violation and $2,500 per day for continuing violations; (2) impose prospective noncompliance fines against Monfort officers, representatives, agents, and attorneys in the amount of $1,000 per violation, and $300 per day for continuing violations; (3) award the Board one-third (33⅓%) of its reasonable attorney fees; and (4) award the Board its costs.

Both parties filed objections to the Special Master's report. Monfort's objections concern only the Master's suggested remedies. The Board has filed numerous objections attacking the Master's findings of fact, conclusions of law, and suggested remedies.

■■■ The issue before us is whether Monfort failed to comply with this court's May 29, 1992 judgment. The burden of demonstrating Monfort's noncompliance rests on the Board, which must show contumacious conduct by clear and convincing evidence. *NLRB v. John Zink Co.*, 551 F.2d 799, 801 (10th Cir.1977). On appeal, we accept the Special Master's findings of fact unless clearly erroneous, *id.*, and we will not overturn a finding supported by substantial evidence "unless we are left with the definite and firm conviction that a mistake has been made." *NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 631 (9th Cir.1977) (citations omitted). We review the Special Master's conclusions of law de novo. *Id.*

Upon careful review of the Special Master's report, and our independent review of the record, we conclude the Master's findings of fact are supported by substantial evidence and are not clearly erroneous. We also hold that the Master correctly applied the governing legal standards to the findings; thus, we will not upset his conclusions of law. Upon review of the Board's objections to the Special Master's findings of fact and conclusions of law, we conclude they are not well taken.[3]

■■■ We now turn to the Special Master's suggested remedies. The sanction of civil contempt serves two remedial purposes: (1) to enforce compliance with an order of the court, and (2) to compensate for losses caused by the noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499–500, 93 L.Ed. 599 (1949). The sanctions imposed are to be remedial or coercive, but not penal, and are to be adapted to the particular circumstances of each case. *NLRB v. Southwire Co.*, 801 F.2d 1252, 1259 (11th Cir.1986). In considering the Special Master's recommendation for a remedial order in a civil contempt proceeding, we are not bound by the clearly erroneous standard of review; instead, we "may accept, reject, or modify his recommendations in order to provide 'full remedial relief.'" *NLRB v. J.P. Stevens & Co., Inc.*, 563 F.2d 8, 22 (2d Cir. 1977) (quoting *McComb*, 336 U.S. at 193, 69 S.Ct. at 500), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1240, 55 L.Ed.2d 765 (1978).

■■■ We have carefully reviewed the Special Master's suggested remedies, and we agree with the Master's recommendation that we impose prospective fines against Monfort and Monfort's officers, representatives, agents, and attorneys, for any future violations. We reject Monfort's recommendation that we impose discretionary fines limited by a maximum amount, as opposed to specific, prospective noncompliance fines. We conclude such discretionary fines would diminish the compliance enforcement value of the fines and would only serve to encourage litigation.

We likewise agree with the Special Master's recommendation that we limit the Board's recovery of attorney fee's to one-third (33⅓%), consistent with the extent to which the Board prevailed in this case. For

---

**3.** We note that, although we agree with the Special Master's conclusion that Monfort violated our judgment in five instances, our review of the record leaves us with the distinct impression that the Union was guilty, on occasion, of engaging in "baiting" tactics. For example, the Master found that Monfort gave its supervisors free meal tickets to encourage them to eat in the cafeteria prior to the election. The Master concluded, however, that this activity was solely in response to the Union's harassment of and open hostility toward the supervisors who had been legitimately taking their meals in the cafeteria without such incentives.

purposes of consistency with the attorney fee award, however, we accept Monfort's recommendation and modify the award of full costs to the Board to an award of one-third (33⅓%) of the Board's costs. *See John Zink Co.*, 551 F.2d at 804 (awarding NLRB two-thirds of its costs when it prevailed on two out of three contempt charges).

■ Turning to the Board's objections to the Master's remedy, we first reject its recommendation that we impose prospective noncompliance fines in the amount of $200,000 against Monfort for any future violations. We agree with the Master's finding that the Monfort violations at issue here were "isolated and sporadic, rather than pervasive and continuous." As a result, we conclude a fine of $200,000 would be excessive, unnecessary to enforce future compliance, and penal in nature.

We accept several of the Board's suggested additional remedies including: (1) an order that Monfort comply with our May 29, 1992 judgment, (2) backpay for Kelly Roberson, (3) expungement of disciplinary warnings in Roberson's and Gutierrez's employment records, (4) notice posting, (5) employee mailings, and (6) compliance reports. We hold these additional remedies will provide full remedial relief by enforcing Monfort's compliance with our May 29, 1992 judgment and compensating the individual employees harmed by Monfort's past noncompliance. *See, e.g., NLRB v. Construction & Gen. Laborers' Local 1140*, 887 F.2d 868, 871–72 (8th Cir.1989) (imposing notice, mailing, and compliance report sanctions); *NLRB v. Southwestern Bell Tel. Co.*, 730 F.2d 166, 175 (5th Cir.1984) (imposing expungement sanctions); *John Zink Co.*, 551 F.2d at 803–04 (imposing backpay award). Because we agree with the Special Master's finding that Monfort's conduct did not "reflect [a] pattern of contumacious conduct," we deny the Board's request for an extension of union access remedies for an additional two years. As to the Board's further suggested additional remedies, we conclude they are either inappropriate or unnecessary.

For all of the foregoing reasons,

IT IS ORDERED that the Special Master's findings of fact and conclusions of law are adopted in their entirety, and the Special Master's suggested remedies are adopted with amendments as outlined below.

IT IS FURTHER ORDERED and ADJUDGED that Monfort, Inc., formerly known as Monfort of Colorado, Inc., is in civil contempt of this Court's judgment entered on May 29, 1992.

In order to purge themselves of such contempt, Monfort, its officers, agents, successors and assigns shall:

1. Fully comply with and obey the judgment of May 29, 1992, and not in any way, by action or inaction, commit, engage in, induce, or encourage any violation of said judgment;

2. Grant to employee Kelly Roberson a wage increase to Group Seven, retroactive to January 1993, and make him whole for any loss of wages suffered by him by virtue of Monfort's having denied him the January 1993 wage increase, said amount, unless agreed upon by the parties, to be computed by the Board in a supplemental proceeding, subject to review by this Court; and immediately furnish to the Board or its agents, upon request, all records needed to compute the backpay;

3. Expunge Kelly Roberson's record of any disciplinary warnings made in connection with his work on the K Pac 3 machine on or about February 4, 1993, and notify him in writing that this expungement has occurred and that the warnings will not be used against him in any manner;

4. Expunge Celia Gutierrez's record of any disciplinary warnings in connection with her leaving her work station on or about July 17, 1993, and notify her in writing that this expungement has occurred and that the warnings will not be used against her in any manner;

5. Duplicate at its own expense and post at its Greeley, Colorado Beef Plant facility copies of the contempt adjudication; said copies shall be posted in conspicuous places, including all places where notices to employees are customarily posted, for a period of sixty (60) days, and shall be maintained in clearly legible condition throughout such posting period, Monfort taking all steps nec-

essary to assure that they are not removed, altered, defaced, or covered by any other material;

6. Duplicate and mail, at its own expense, a copy of the contempt adjudication to each of its current employees, and all former employees who were employed at the Greeley facility at any time since May 29, 1992;

7. Duplicate, mail, and post, in the same manner as described in paragraphs (7) and (8) above, Spanish-language translations of the English-language contempt adjudication. The Regional Director of Region 27 of the Board will provide copies of the Spanish-language translations for posting and mailing by Monfort. Expenses of any translators needed for this purpose shall be paid for by Monfort;

8. Notify the Regional Director of Region 27 of the Board within twenty (20) days after entry of the Order and again at the end of the posting period, showing what steps have been taken by Monfort to comply with the Court's directions;

9. Pay to the Board one-third (33⅓%) of its costs, expenses, and reasonable attorney fees, incurred by the Board in the investigation, preparation, presentation, and final disposition of this proceeding; said amount, unless agreed to by the parties, to be fixed by further order of this Court upon submission by the Board, within ninety (90) days of the entry of this order, of a certified statement of such costs and expenses.

It is FURTHER ORDERED that in order to assure against further violations of the Court's judgment and contempt adjudication, the Court hereby imposes a prospective non-compliance fine of $25,000 against Monfort for each and every future violation of the Court's judgment and contempt adjudication found by the Court and a further fine of $2,500 per day for each day the Court finds the violations have continued; and imposes a prospective noncompliance fine of $1,000 per violation and $300 per day against any officer, representative, agent, or attorney of Monfort who, in active concert and participation with Monfort and with notice and knowledge of the Court's judgment or adjudication, violates said judgment or adjudica-

tion. Fines imposed pursuant to this adjudication against any individual contemnors shall not be paid for or reimbursed by Monfort.

It is so ordered.