Eloise Pepion COBELL,
et al., Plaintiffs,

v.

Gale NORTON, Secretary of the
Interior, et al., Defendants.

No. CIV.A. 96–1285(RCL).

United States District Court,
District of Columbia.

March 29, 2002.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Order to Show Cause Why Defendants and Their Employees and Counsel Should Not Be Held in Contempt and for Sanctions for Violating the Anti–Retaliation Order, filed August 15, 2000. After a full review of the parties' memoranda filed in support of and in opposition to the motion, the Recommendation and Report of the Special Master, and the record in this case, the Court finds that the plaintiffs' motion should be denied.

### I. BACKGROUND

The plaintiffs' motion is based on the defendants' purported retaliatory treatment of Bureau of Indian Affairs ("BIA") employee Mona Infield ("Infield"). In their motion, the plaintiffs allege that the defendants violated the Court's Order of May 21, 1999 ("anti-retaliation order"), which provides that:

> The Department of the Interior, together with all of its supervisory officials, are hereby enjoined from taking any retaliatory action, or making any threats of

such action, for providing testimony or information in this action, against (1) any person who has been identified as a potential witness in this case on Plaintiff's List of Witnesses Expected to Testify on "Fixing the System" in Response to May 4, 1998 Scheduling Order, filed October 1998, (2) any person who is called upon through legal process (e.g., notice of deposition, subpoena, etc.) to give testimony or provide other information in this litigation, or (3) any person individually identified by Plaintiffs, in writing, to Defendants as a potential witness in this action.

Specifically, the plaintiffs claim that "[s]ince plaintiffs first submitted Ms. Infield's affidavits to this Court, beginning March 7, 2000, to support their motion for a temporary restraining order, Ms. Infield has been slandered, stripped of her trust management and reform duties and supervisory responsibilities, evicted from her office, and assigned indefinitely to her home." Pl. Motion at 2. The plaintiffs assert that such treatment unquestionably violates this Court's anti-retaliation order.

In response, the defendants contend that no adverse action has been taken against Infield as a result of her providing affidavits in support of the plaintiffs' motion for a temporary restraining order. Def.s' Opp'n at 37. Moreover, the defendants argue that even if they had retaliated against Infield, the Court should not issue an order to show cause because "Interior's over-correction to avoid the appearance of a violation of the Court's Order removed any issue regarding the need for further coercion or compensation." Def.s' Objection to Recommendation and Report of the Special Master at 1.

Pursuant to an agreement between the parties, the Court directed the Special Master to make a preliminary determination of whether sufficient evidence existed to warrant formal judicial proceedings. The Special Master, in his February 21, 2001 Recommendation and Report, concluded that "sufficient evidence [did exist] to support a finding of probable cause that the actions complained of by Infield were retaliatory and initiated in violation of the Court's Order." Recommendation and Report of the Special Master at 16. Thus, he "recommend[ed] that the matter be forwarded to the Court for appropriate further proceedings." *Id.* at 16.

## II. DISCUSSION

■ This Court undoubtedly has the inherent authority to enforce its orders through the exercise of its contempt powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (noting that "it is firmly established that 'the power to punish for contempt is inherent in all courts.' "). It is equally clear that this Court also has considerable discretion in deciding whether to exercise that power. *See, e.g., Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir.2001) (noting that "[a] district court may exercise broad discretion in using its contempt power to assure compliance with its orders."); *Dunn v. New York Dep't of Labor*, 47 F.3d 485, 490 (2d Cir.1995) (noting that "[a] district court's decision not to hold a party in contempt is reviewed ... for abuse of discretion."); *In re Crystal Palace Gambling Hall*, 817 F.2d 1361, 1364 (9th Cir.1987) (recognizing that "[a] court has wide latitude in determining whether there has been contemptuous defiance of its order[.]"); *Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, 1996 WL 157499 at * 3 (S.D.N.Y. April 4, 1996) (stating that "[w]hile the Court does not take lightly Matthew's failure to adhere to the deadlines it imposed, the Court in its discretion declines to sanction Matthew for contempt[.]"). As a corollary to that dis-

cretion, the Court has considerable latitude in deciding whether to issue an order to show cause for contempt. *Sermak v. Manuel*, 194 F.3d 1314 (6th Cir.1999) ("An imposition of contempt sanctions is reviewed for abuse of discretion. The district court's issuance of an order to show cause for contempt is likewise reviewed for abuse of discretion."); *Sumler v. Secretary of Health & Human Servs.*, 834 F.2d 711, 713 (8th Cir.1987) (noting that "[t]he use of a show cause order is within the discretion of the district court[.]"); *Bermudez v. HUD*, 84 F.Supp.2d 1094, 1097 (C.D.Cal. 2000) (determining that "the Court will exercise its discretion in this instance and forbear the issuance of an Order to Show Cause[.]"); *Xpressions Footwear Corp. v. Peters*, 1996 WL 554602 at * 3 (S.D.N.Y. Sept. 30, 1996) (concluding that "[b]ecause it would serve little purpose at this time to embark on additional collateral litigation, I decline to initiate contempt proceedings."). In deciding whether to issue an order to show cause, a court should be mindful that civil contempt proceedings are meant "to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C.Cir.1997). *See also NLRB v. Monfort, Inc.*, 29 F.3d 525, 528 (10th Cir.1994) (observing that "[t]he sanction of civil contempt serves two remedial purposes: (1) to enforce compliance with an order of the court, and (2) to compensate for losses caused by the noncompliance."); *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183 (D.C.Cir.1981) (noting that the purpose of civil contempt actions is remedial).

█ After carefully considering the parties' filings in this matter, the Special Master's Recommendation and Report, and the record herein, the Court has decided not to issue an order to show cause for civil contempt based on the defendants' treatment of Infield. Even assuming that the defendants retaliated against Infield in violation of the anti-retaliation order,[1] the Court is satisfied that the defendants have now brought themselves into compliance with the order and that they have adequately compensated the plaintiffs. In particular, the Court finds that the defendants have sufficiently redressed, for purposes of civil contempt, any harm Infield may have suffered as a result of their retaliatory actions. The Court thus agrees with the defendants' contention that their offers to Infield—particularly the most recent one before the Office of Special Counsel[2]— obviates the need for remedial action by the Court in the form of civil contempt proceedings.[3] It is worth stating, howev-

1. The Court has little difficulty making this assumption considering the defendants' statements in their objection to the Special Master's Recommendation and Report that:

 It is true that Ms. Infield was offered a special accommodation of a two-year temporary job that would have allowed her to avoid a transfer across the country. It is true that after Ms. Infield provided her first declaration in this case, the next job offered by a different manager was for a six-month detail in Albuquerque, at the end of which she would have to move to Reston, Virginia.

2. Defendants offered Infield a permanent position in Albuquerque at the appropriate grade and agreed to pay her reasonable attorneys' fees.

3. In concluding that the defendants have brought themselves into compliance with the anti-retaliation order, the Court assumes that the offers made to Infield before the Office of Special Counsel (which include reasonable attorneys' fees) are still available. If this assumption is incorrect, the plaintiffs may renew their motion for this Court to issue an order to show cause. It is also important to point out that the defendants' previous offers to Infield could not be based on her consenting to forego pursuing other means of obtaining relief. That is, the defendants could not effectively redress retaliatory conduct against

er, that while the Court will not issue an order to show cause based on the alleged retaliation against Infield at this time, the defendants should consider the prospect of future contempt proceedings before engaging in the type of behavior that led to the instant motion by the plaintiffs.

### III. CONCLUSION

 For the foregoing reasons, the Court declines to issue an order to show cause against defendants based on the alleged retaliation involving Mona Infield.[4] In accordance with this decision, it is hereby

ORDERED that Plaintiffs' Motion for Order to Show Cause Why Defendants and Their Employees and Counsel Should Not Be Held in Contempt and for Sanctions for Violating the Anti–Retaliation Order [539–1] [539–2] be DENIED.

SO ORDERED.

Infield (to avoid a contempt proceeding) by conditioning compensation on her agreeing not to pursue other means by which she may obtain relief. If the defendants violated this Court's anti-retaliation order, then it was their responsibility to make Infield whole irrespective of her agreeing not to pursue other avenues of obtaining relief. Moreover, the mere fact that alternative means exist for Infield to obtain relief does not preclude this Court from issuing an order to show cause. Indeed, these alternative means have no effect whatsoever on the Court's power to initiate contempt proceedings to ensure compliance with its orders or to secure compensation for the violation of one of its orders. Rather, in the context of alleged retaliation against Infield, the Court finds that the offers made by defendants before the Office of Special Counsel are sufficient.

4. Although the Court finds that defendants' recent actions obviate the need for civil contempt proceedings based on the alleged retaliation against Infield, the Court expresses no view at this time (and thus this memorandum and order is without prejudice) with respect to criminal contempt proceedings in this regard against Interior defendants or its employees. As noted above, the purposes of civil contempt are to enforce compliance with a court order and to compensate for losses caused by the noncompliance. *See Food Lion,* 103 F.3d at 1016. In contrast, the purposes of criminal contempt are to punish the putative contemnor for violating the court order and to vindicate the authority of the court. *See Evans v. Williams,* 206 F.3d 1292, 1295 (D.C.Cir.2000) (noting that a sanction imposed based on a finding of criminal contempt is "punitive, to vindicate the authority of the court.").